# Exhibit A

EDWARD F. CULLEN, # 133155
WILLIAMS, PINELLI & CULLEN, LLP
110 North Third Street
San Jose, California 95112
Telephone: (408) 288-3868
Facsimile: (408) 288-3860

MARC L. PINCKNEY, #127004
4660 La Jolla Village Drive
Fifth Floor - PMB 50077
San Diego, California 92122
Telephone: (408) 857-0880

Attorneys for Plaintiff
SILICON VALLEY TELECOM EXCHANGE, LLC

ENDORSED
FILED

JAN -6 2012

IN THE SUPERIOR COURT THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA- UNLIMITED

SILICON VALLEY TELECOM EXCHANGE, LLC, a California corporation,

Plaintiffs,

v.

VERIO, INC., a Delaware corporation; NTT AMERICA, INC., a Delaware corporation; and DOES 1 through 25, inclusive,

Defendants.

CASE NO. 1 12 CV 216304

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff, SILICON VALLEY TELECOM EXCHANGE, LLC ("Plaintiff" or "SVTX") alleges:

1. Defendant VERIO, Inc. ("Verio") is and at all times herein mentioned was a corporation organized in the State of Delaware and doing business in the State of California, Santa Clara County.

2. Defendant NTT AMERICA, Inc. ("NTTA") is and at all times herein mentioned was a corporation organized in the State of Delaware and doing business in the State of

California, Santa Clara County.

3. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

4. At all times herein mentioned, Plaintiff Silicon Valley Telecom Exchange, LLC ("Plaintiff" or "SVTX") was, and now is, a limited liability corporation incorporated in the State of California and doing business in Santa Clara County.

5. At all times herein mentioned, the San Jose Unified School District ("SJUSD") was the owner of real property at 250 Stockton Ave, San Jose, California ("Stockton Ave. Property") which consisted of a two-story, 94,000 square foot, warehouse building on approximately 2.4 acres of land.

6. On February 18, 1999, Rubio & Associates, Inc., a California corporation, entered into a 25 year lease commercial real estate lease with SJUSD for lease of the Stockton Ave Property.

7. After entering into the commercial lease with the SJUSD, Rubio & Associates, Inc. assigned its rights under the commercial lease for the Stockton Ave. Property to SVTX.

8. SVTX developed a business plan to sublease space at the Stockton Ave. property to telecommunications companies as the property was suited for Internet telecommunications companies. To that end, more than $2 Million was spent remodeling the Stockton Ave Property to make the property suitable for sublease to Internet telecommunications companies.

9. In or about May 1999, SVTX entered into a twenty year written sublease with Verio ("Verio Sublease"), with Verio having the right to elect an early termination on the 10th year and 15th year anniversaries of the lease. Verio subleased approximately 17,111 rentable

square feet on the first floor and 4,845 rentable square feet in the basement of the Stockton Avenue Property as well as space in the parking lot for the installation of Verio's diesel generators and fuel tank, (Premises). The first year's annual rent for the space leased by Verio was $460,251.24 and the written sublease agreement provided for annual rent increases of 2.75% each year thereafter.

The Verio Sublease also provided that: Verio was obligated to pay for its pro rate share of common area maintenance charges;

10. In the event of hazardous material contamination (including contamination caused by petroleum products) caused by Verio, Verio was required to promptly take all clean up actions required by law;

11. Verio was obligated to obtain SVTX's prior written consent before any remediation actions were to be taken by Verio.

12. Verio agreed to protect SVTX against any damage, loss, or cost caused by the petroleum products brought on to the Stockton Ave. property by Verio;

13. Verio was required to return the subleased Premises to SVTX in the same condition as Verio received the Premises.

14. SVTX did not provide any document or email giving Verio the right to hold over.

15. By their own choice, Verio remained on the property to perform the clean up.

16. Verio was obligated to pay SVTX for the time Verio retained possession of any part of the leased property after termination of the lease.

17. At the SVTX's election, the holding over shall constitute renewal of the Verio Sublease on a month to month basis.

Attached hereto as **Exhibit A** is a true and correct copy of the Verio Sublease.

18. The Verio Sublease commencement date was July 1, 2000. Prior to June 30, 2010, Verio gave SVTX notice of its intention to elect an early termination of the of the Verio Sublease. The termination date of the Verio Sublease was to be June 30, 2010.

19. In May 1999, SVTX entered into a ten year sublease with NTTA ("NTTA Sublease") for approximately 11,012 square feet on the first floor the Stockton Avenue property. NTTA's annual rent was initially $288,072 and the written sublease agreement provided for annual rent increases of four percent (4%) each year thereafter. The NTTA Sublease also provided that: NTTA was obligated to pay for its pro rate share of common area maintenance charges.

20. In the event of hazardous material contamination (including contamination caused by petroleum products) caused by NTTA, NTTA was required to promptly take all remedial actions required by law

21. NTTA was required to obtain SVTX's prior written consent to the actions to be taken by NTTA;

22. NTTA agreed to protect SVTX against any damage, loss, or cost caused by the petroleum products brought on to the Stockton Ave. property by NTTA; NTTA was required to return its subleased premises to SVTX in the same condition as NTTA received the premises;

23. NTTA was obligated to pay SVTX for the time NTTA retained possession of any part of the leased property after termination of the lease by lapse of time or, at the SVTX's election.

24. Holding over shall constitute renewal of the NTTA Sublease on a month to month basis.

Attached hereto as **Exhibit B** is a true and correct copy of the NTTA Sublease .

25. The NTTA Sublease commencement date was June 1, 2000. Prior to May 31, 2010, NTTA gave SVTX notice of its intention not to extend the NTTA Sublease. The termination date was May 31, 2010.

26. Verio and NTTA constructed improvements in their respected leased Premises. Verio's improvements included the construction and installation of four diesel generator concrete pads, three diesel generators, a 4,000 gallon concrete fuel tank and other equipment to

support the generators.

27. The diesel generators provided a back up power supply should electrical power provided by Pacific Gas & Electric ("PG&E") be interrupted.

28. Verio and NTTA shared a common electrical power distribution system such that the diesel generators installed by Verio in its leased Premises also provided NTTA with a back up power supply in the event of an interruption of electrical power from PG&E.

29. Verio initially operated and maintained the diesel generators and associated fuel tank. At some point during the period of NTTA sublease with SVTX, NTTA assumed the responsibility for operating, maintaining and fueling Verio's diesel generators and associated fuel tank.

30. SVTX is informed and believes that Verio contracted with CBI Technology Group ("CBI") to perform soil testing in and around the diesel generators and fuel tank and CBI contracted with American Soil Testing, Inc. ("AST") to perform the soil collection and testing.

31. AST collected soil samples on or about March 9, 2010 and on March 26, 2010 AST prepared a report detailing that their analysis of the soil samples which revealed the presence of diesel fuel. SVTX is informed and believes that CBI forwarded the AST report to Verio.

32. On May 19, 2010, representatives for SVTX, Verio, and NTTA performed a walk through of the Verio and NTTA leased Premises to identify repairs required, if any, that needed to be completed prior to returning the leased Premises to Plaintiff in the condition required by the Verio Sublease and NTTA Sublease.

33. At the conclusion of the walk through on May 19, 2010, representatives of Verio disclosed for the first time that soil testing had been performed in and around the diesel generators and fuel tank and that the soil testing revealed the presence of diesel fuel contaminated soil.

34. At the May 19, 2010 walk through of the leased Premises, Verio acknowledged

responsibility for the clean up of the diesel fuel soil contamination. Verio's representatives lead SVTX's representative to believe that soil contamination was minor, limited to a small area, and was the result of rain water washing diesel fuel off an exposed fuel pipe adjacent to a manual hand fuel transfer pump.

35. On or about May 26, 2010, Verio provided SVTX with the AST soil test report.

36. In June 2010, Verio submitted a remediation plan to SVTX. SVTX retained counsel specializing in legal issues associated with environmental contamination as well as retained environmental consultant. Verio is obligated to reimburse SVTX for costs associated with the soil remediation, including the costs of SVTX's counsel and environmental consultant.

37. In July 2010, Verio commenced the physical work to remediate the diesel fuel soil contamination in and around the area of the diesel generators and fuel tank.

38. The remediation work included excavating large quantities of soil, excavating soil around and under the diesel generators/fuel tank, storing contaminated soil in the parking area, hauling away of contaminated soil, replacement of contaminated soil with clean fill, and repaving the areas excavated.

39. Verio advised SVTX that the physical remediation work was completed February 28, 2011 and workmen and equipment were no longer present at the Stockton Ave. Property after that date.

40. Verio never completed the necessary Final Environmental Report needed to secure the closure letter from the County and City agencies responsible for environmental soil contamination and clean up efforts.

41. SVTX has repeatedly requested since March, 2011 this Final Environmental Report signed and stamped by a California Certified Professional Civil Engineer or a California Certified Professional Geologist.

42. CBI advised SVTX that CBI was instructed by Verio not provide the Final Environmental Report.

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

**(As to Verio)**

43. Plaintiff incorporates paragraphs 1 thought 42, inclusive, as if set forth in full herein.

44. Plaintiff has performed all conditions, covenants, and promises required to be performed by Plaintiff in accordance with the terms and conditions of the Verio Sublease.

45. Pursuant to the Verio Sublease, Verio was and is a holdover tenant because: Verio failed to return the subleased Premises to SVTX in the condition required by the Verio Sublease;

46. Verio and/or its agents caused diesel fuel contamination on the Stockton Ave. Property which was not cleaned up on or before intended June 30, 2010 lease termination date;

47. Verio retained possession of the leased Premises while its contractor removed diesel contaminated soil;

48. Verio failed to obtain an environmental closure letter from the appropriate governmental entity after the diesel fuel cleanup and remediation which has prevented SVTX from subleasing the Premises to another prospective subtenant.

49. SVTX has provided Verio with monthly invoices for holdover rent and Common Area Maintenance (CAM) charges commencing with rent and CAM charges July 1, 2010.

50. Verio has breached the Verio sublease due its failure to pay and refusal to pay holdover rent and CAM charges owing since July 1, 2010 as required by the sublease.

51. Plaintiff's damages and Verio's obligation to pay hold over rent and CAM charges continue until such time as Verio obtains the required environmental closure letter from the proper County or City governmental agencies for the soil remediation performed by Verio so that Plaintiff can sublease the space to another subtenant.

52. Verio has failed to reimburse Plaintiff costs incurred in connection with Verio's soil remediation activities, including but not limited to legal fees and environmental consultant fees despite the contractual obligation to do so as set forth in the Verio Sublease and Verio's

repeated assurances that it would reimburse such charges and Plaintiff having provided Verio with Plaintiff's costs for such charges.

53. As a result of the soil contamination and Verio's breach of the Verio Sublease, SVTX has been unable to sublease the space vacated by Verio to another telecommunication subtenant.

54. Prospective subtenants would be exposed to liability for soil contamination caused by Verio until such time as Verio obtained an environmental closure letter which Verio has not done.

**SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT**

**(As to NTTA)**

55. Plaintiff incorporates paragraphs 1 thought 42, inclusive, as if set forth in full herein.

56. Plaintiff has performed all conditions, covenants, and promises required to be performed by Plaintiff in accordance with the terms and conditions of the NTTA Sublease.

57. NTTA assumed responsibility for the operation and maintenance of Verio's diesel generators and fuel tank.

58. In fact, NTTA did maintain, operate and obtain fuel for Verio's diesel generators after Verio left the premises and transferred all rights to NTTA.

59. NTTA breached the NTTA Sublease by causing and/or failing to timely address diesel fuel soil contamination on the Stockton Ave. property.

60. NTTA failed to return its subleased premises in the condition required by the NTTA sublease.

61. As a result of NTTA's breach of the NTTA Sublease, NTTA is obligated to pay hold over rent and CAM charges until such time as the Stockton Ave. property is returned to in the condition that NTTA and Verio agreed to when they accepted the subleased Premises.

62. Plaintiff has been damaged by NTTA's breach of the NTTA Sublease in that

NTTA is contractually obligated to reimburse Plaintiff costs incurred in connection with soil remediation activities, including but not limited to legal fees and environmental consultant fees which to date have not been reimbursed.

63. As a result of the diesel fuel soil contamination and NTTA's breach of the NTTA Sublease, SVTX has been unable to sublease the space vacated by NTTA to another telecommunication subtenant.

64. The NTTA subleased Premises are valueless to a prospective telecommunications subtenant as prospective subtenants would be exposed to liability for soil contamination caused by NTTA until such time as NTTA obtained an environmental closure letter which NTTA has not done.

**PRAYER**

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as follows:

1. For hold over rent, CAM charges, and reimbursement of Plaintiff's costs associated with soil contamination remediation according to proof.

2. For Plaintiff's lost rent for space at the Stockton Ave. Property that could not be rented because of the soil contamination, impairment of the back up electrical power due to remediation activities, and failure to obtain an environmental closure letter.

3. For reasonable attorney's fees according to proof.

4. For costs of suit and

5. For such other and further relief as the court may deem proper.

Dated: January 5, 2012

WILLIAMS, PINELLI & CULLEN, LLP

By [signature]
EDWARD F. CULLEN
Attorneys for Plaintiff
Silicon Valley Telecom Exchange, LLC

**VERIFICATION**

I, Fred D. Rubio, II, am the managing member of Silicon Valley Telecom Exchange, LLC, a party to this action, and am authorized to make this verification on its behalf. I have read the foregoing VERIFIED COMPLAINT FOR BREACH OF CONTRACT ("Complaint") and know its contents. I am informed and believe and on that ground allege that the matters stated in the foregoing Complaint are true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on January 5, 2012, at San Jose, California.

By: ______________________
Fred D. Rubio, II

EXHIBIT A



Case 5:12-cv-00899-HRL Silicon Valley Telecom Exchange, LLC v. Verio, Inc et al. RE: Clerks Notice re: Failure to E-File and Register
Larson, Kimiko E. to: HRLpdf@cand.uscourts.gov 02/28/2012 12:36 PM
Cc: "Day, Peter H.", "Larson, Kimiko E."

2 attachments



20120223 Defendants Verio and NTTA Joint NOTICE OF REMOVAL (ND Cal caption).pdf mg_info.txt

Dear Magistrate Judge Lloyd:

Attached is the PDF copy of Defendants' Joint Notice of Removal filed in the captioned case, which includes Exhibits A-E. This is being sent to you in compliance with Docket 8, the Clerk's Notice (Filed 2/27/2012), excerpt following:

> **"CLERKS NOTICE . . . Therefore, counsel for Defendants should submit the Exhibits A - E to Notice of Removal, in PDF format within 10 days, as an attachment in an e-mail message directed to the judges chamber's "PDF" email box listed at http://ecf.cand.uscourts.gov (bw, COURT STAFF) (Filed on 2/27/2012)"**

Sincerely,

Kimiko Yamashiro Larson
Assistant to Eric S. Walters | Emily H. Sheffield | Peter H. Day | Dinah X. Ortiz | Stefan J. Szpajda | Daniel C. Hubin | Mark T. Smoot
**MORRISON | FOERSTER** | 755 Page Mill Road
Palo Alto, CA 94304 | ✉: klarson@mofo.com | ☎: (650) 813-5771 | ℻: (650) 494-0792