*E-FILED: August 13, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SILICON VALLEY TELECOM EXCHANGE, LLC,<br><br>            Plaintiff,<br>     v.<br><br>VERIO, INC. ET AL.,<br><br>            Defendants.<br>_____/ | No. C12-00899 HRL<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Verio Inc. ("Verio") and NTTA America, Inc. ("NTTA") leased separate subdivided spaces in a large warehouse at 250 Stockton Ave., San Jose.  Their businesses required them to have backup electrical power.  Verio installed diesel generator concrete pads, three diesel generators, and a fuel tank on the grounds of 250 Stockton Ave., and both it and NTTA used them as needed.  In mid-2010, just as their respective leases were ending, Verio undertook, and within months finished, a remediation project to remove soil contamination from the area around the concrete pads.

Silicon Valley Telecom Exchange, LLC ("SVTX"), the plaintiff here, is the defendants' former landlord.  It sues Verio and NTTA for breaching their leases.  Its suit focuses on the remediation work around the diesel generators. The remediation, says SVTX, was incomplete, inadequate, and not properly "certified" by a responsible public agency.  Thus, the argument goes, defendants - having not left the premises in good order - never really vacated and so are liable for "hold over" rent from the date of expiration of the leases and continuing forward until the problem

is fixed. SVTX also seeks damages on account of its claimed inability to re-rent the space vacated by defendants because of the lingering specter of contamination around the generator pads, for Common Area Maintenance charges from when the leases ended to the present, or until it obtains and "environmental closure letter," and for reimbursement of costs and fees related to the remediation. SVTX claims that it has been unable to sublease the space vacated by defendants because of the soil contamination, impairment of the back-up electrical power due to remediation activities, and defendants' failure to obtain an environmental closure letter.

Before the Court are defendants' motions for partial summary judgment on the issue of whether SVTX is entitled to holdover rent, and whether the failure to obtain an environmental closure letter constituted a breach of the lease agreements. SVTX opposes the motions. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636; FED. R. CIV. P. 73. Upon consideration of the moving and responding papers, as well as the arguments of counsel at the May 21, 2013 hearing, this Court grants defendants' motions.

**BACKGROUND**

Verio and NTTA move separately for partial summary judgment, but make overlapping arguments and rely on much of the same evidence in support of their motions. The following facts are undisputed:

The San Jose Unified School District ("SJUSD") owned real property at 250 Stockton Ave, in San Jose, California, which consisted of a two-story, 94,000 square foot warehouse building on about 2.39 acres of land ("Stockton Avenue Property"). An entity named Rubio & Associates, Inc. entered into a 25-year commercial real estate lease with SJUSD for lease of the Stockton Avenue Property. Rubio & Associates, Inc. then assigned its rights under this lease to SVTX. SVTX developed a plan to sublease the space to telecommunications companies, like Verio and NTTA.

2

Verio is in the business of delivering online business solutions. NTTA provides corporate customers with business communications solutions.

### 1. Verio Sublease

SVTX entered into a 20-year sublease with Verio ("Verio Sublease"), under which Verio had the right to elect early termination on the 10th year anniversary of the lease. The Verio Sublease commenced July 1, 2000. Prior to the 10th year anniversary of the lease, Verio gave SVTX notice of its intention to elect an early termination of the Verio Sublease. The new termination date of the Verio Sublease was to be July 1, 2010. Verio surrendered possession of the Premises and returned its keys on July 2, 2010.

The Verio Sublease essentially defines the "Project" as all of the Stockton Avenue Property, and the "Premises" as a portion of the Project. Specifically, the Verio Sublease defines the "Project" as "[a]pproximately 2.39 acres of land on which the Building is situated and all improvements thereon, including but not limited to the Building, paved areas and rights of way." (Declaration of Bryan Wilson, Dkt. 36-2 ("Wilson Decl."), Ex. A, p. iii). The Verio Sublease defines the "Premises" as "[p]ortions of the main floor and the basement of the Building," more specifically, "[a]pproximately 17,111 rentable square feet and 15,010 usable square feet on the main floor and approximately 3,420 rentable square feet and 3,020 usable square feet on the basement." (*Id.*; *see also* Ex. A to Ex. A of Wilson Decl., Dkt. 36-3 pp. 33-34.) The Verio Sublease gave Verio the non-exclusive right to use common areas of the Project, and the exclusive right to use the area designated as the Premises. (Wilson Decl. Ex. A, Lease Preamble.) It also allowed Verio to place three electricity generators and a fuel tank outside the Premises, but on the Project. (*Id.* Arts. 1.1, 38.1, and Ex. F to Ex. A of Wilson Decl.) Verio installed diesel power generators on the Project as a back-up power source for its operations at the Stockton Avenue Property.

### 2. NTTA Sublease

SVTX entered into a 10-year sublease with NTTA ("NTTA Sublease") that started on June 1, 2000 and ended on May 31, 2010. The NTTA Sublease also defines the "Project" as all of the Stockton Avenue Property, and the "Premises" as the portion of the Project subleased exclusively to NTTA. Just like the Verio Sublease, the NTTA Sublease defines the "Project" as "[a]pproximately 2.39 acres of land on which the Building is situated and all improvements thereon, including but not limited to the Building, paved areas and rights of way." (Declaration of Bryan Wilson, Dkt. 34-4 ("NTTA Wilson Decl."), Ex. A, p. iii). The NTTA Sublease defines the "Premises" as "[a] portion of the main floor," and, more specifically, "[a]pproximately 11,012 rentable square feet and 9,660 usable square feet on the main floor." (*Id.*; *see also* Ex. A to Ex. A of NTTA Wilson Decl., Dkt. 34-5 pp. 33-34.) Like the The Verio Sublease, the NTTA Sublease gave NTTA the non-exclusive right to use common areas of the Project, and the exclusive right to use the area designated in the NTTA Sublease as the Premises. (NTTA Wilson Decl. Ex. A, Lease Preamble.) The NTTA Sublease also allowed NTTA to install generators and a fuel tank on the Project. (*Id.* Arts. 1.1, 38.1.) NTTA did not install its own generators, but instead used Verio's generators.

### 3. Soil Contamination and Remediation

In March 2010, Verio hired a third party to perform soil testing around the generators and fuel tank. The soil testers detected some contamination and in May 2010, Verio told SVTX that testing had revealed the presence of diesel fuel in some of the soil around the generators and fuel tank. Verio offered to pay for and execute the clean-up of the soil contamination.

Verio gave SVTX the soil test report and submitted a remediation plan to SVTX. In July 2010, after the termination date of the Verio Sublease and after Verio had otherwise vacated the Premises, Verio started the remediation. SVTX hired an environmental consultant, Benjamin Berman of E2C Inc., to provide environmental consulting services in connection with the remediation.

Verio completed its remediation efforts on February 28, 2011, and workmen and equipment were no longer present at the Stockton Avenue Property after that date. Berman, SVTX's environmental consultant, stated that the remediation's goal was to remove as much impacted soil as practically could be removed, and that this goal was met as of the end of February 2011. (Wilson Decl. Ex. E, at 36:15–37:14.). Berman also stated that, though various regulatory agencies had been approached in advance of the remediation and asked to oversee it, the regulatory agencies declined. (*Id.*) Even though it declined to oversee the remediation, the San Jose Fire Department ("SJFD") had asked to receive documentation of the remediation work. Verio provided the final soil test results to the SJFD and the Fire Department confirmed that it required nothing further. (David Belger Declaration, Dtk. 35-2, Ex. B.)[1] Verio paid for the remediation.

The remediation activities were limited to parts of the Project and did not take place within the boundaries of the Premises (as defined in either of the subleases). Mr. Rubio, the member of SVTX who signed the Verio Sublease, the NTTA Sublease, and the Verified Complaint, has stated that the generators were installed and remediation activity took place outside of the Premises (as defined in either the Verio Sublease or the NTTA Sublease), and on the Project. (Wilson Decl., Ex. D, at 106:25-116:1, Ex. A at 42 (Dkt. 36-3, p. 42).)

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a

---

[1] SVTX objects to Verio's attachment of emails from the San Jose Fire Department to Belger's Declaration based on Belger's alleged lack of personal knowledge to authenticate the emails, and hearsay. The Court overrules SVTX's objections. Belger may authenticate the emails because he was a recipient of them. The emails are not hearsay because they are offered to show that Belger was put on notice that the SJFD required no further documentation. *See* Weinstein's Federal Evidence, § 801.11[5][a] (2nd ed. 2000) ("Statements are not hearsay when they are offered not for their truth but to prove the extent of a declarant's knowledge or a recipient's notice of certain conditions.")

triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

Verio and NTTA move for partial summary judgment on the issue of whether they are holdover tenants and whether they breached the subleases by failing to provide an environmental closure letter.[2]

---

[2] NTTA also argues that a settlement agreement between NTTA and SVTX bars SVTX's breach of contract action for holdover rent against NTTA. SVTX objects to the attachment of the settlement agreement to the Washenko Declaration based on Washenko's alleged lack of personal knowledge to authenticate the emails, and hearsay. The Court overrules SVTX's objections. Washenko may authenticate the settlement agreement because, as he stated in his declaration, he has personal knowledge of the agreement from advising NTTA throughout its negotiation. The settlement agreement is not hearsay because it is a written contract that memorializes the fact of a legal agreement, and falls outside the definition of hearsay. *United States v. Bellucci*, 995 F.2d 157, 161 (9th Cir. 1993). The Court has reviewed the

6

### 1. Holdover Rent

Under the subleases, holdover rent is charged at 150% of the regular rental rate. Article 14 of the Verio Sublease and Article 14 of the NTTA Sublease govern holdover tenancy. The provision in both subleases is the same. It states:

> HOLDING OVER. Tenant shall pay Landlord **for each day Tenant retains possession of the Premises** or part of them after termination of this Lease by lapse of time or otherwise at the rate ("Holdover Rate") which shall be (a) 150% of the amount of the Annual Rent for the last period prior to the date of such termination as adjusted pursuant to Section 3.1, plus (b) Tenant's Proportionate Share of Direct Expenses and Taxes. If Landlord gives notice to Tenant of Landlord's election to that effect, such holding over shall constitute renewal of this Lease for a period from month to month. In any event, no provision of this Article 14 shall be deemed to waive Landlord's right of reentry or any other right under this Lease or at law.

(Wilson Decl., Ex. A Art. 14) (emphasis added). So, in order to be on the hook for holdover rent, the tenants must have retained possession *of the Premises* after termination of the subleases. Even if the remediation constituted some type of constructive possession (a question these motions do not present to the Court), the remediation occurred on the Project, and not the Premises. Article 14 does not provide authority for finding either defendant liable for holdover rent, because it does not impose holdover rent for any possession of the Project. And, there is no dispute that the remediation occurred on the Project, and not on the Premises.

Defendants present competent evidence that they did not possess the Premises after the expiration of their leases, and SVTX presents no competent evidence to the contrary. Instead, SVTX spends much of its opposition arguing for different types of damages, for breaches of other provisions of the subleases. For example, SVTX cites to Article 1.2, which requires tenants to comply with environmental laws and to hold the landlord harmless from any loss resulting from the tenants' failure to do so. SVTX also cites to Articles 7.2 and 26.2, which require the tenant to remove equipment and to deliver the Premises, and any items installed by it, in good condition. As

---

settlement agreement, however, and finds that its terms do not preclude SVTX from pursuing any claim against NTTA for holdover rent.

7

another example, SVTX cites to Article 19, which allows SVTX to recover rent as it becomes due in the event of default. None of these or the other provisions cited by SVTX entitle it to holdover rent at 150% of the normal rental rate. Even if, *arguendo*, defendants breached the provisions cited by SVTX, the resulting remedy would be compensation for the removal of any leftover equipment, lost rent, or the cost of restoring the Premises to its original condition, not holdover rent at 150% of the rental rate. And, defendants' motions do not ask the Court to determine whether they breached other provisions of the subleases.

SVTX makes only one argument about holdover rent under Article 14, or under any other authority that would entitle it to holdover rent at 150% of the rental rate. SVTX points out that, though the Verio Sublease terminated on July 1, 2010, Verio admits that it did not vacate the Premises until July 2, 2010. SVTX argues that the undisputed facts establish that Verio was a holdover tenant for one day. SVTX makes no argument for holdover rent under Article 14 for NTTA. Accordingly, the Court finds that SVTX is not entitled to holdover rent from Verio after July 2, 2010, and that SVTX is not entitled to holdover rent from NTTA.

**2. Environmental Closure Letter**

Defendants also move for summary judgment of SVTX's claim that their alleged failure to obtain an "Environmental Closure Letter" was a breach of the subleases. Defendants point out the dearth of authority for requiring them to provide such a letter. Neither the subleases, common law, nor any statute or other regulation impose this requirement on defendants. SVTX responds with a declaration from an attorney, Jeffrey S. Lawson, who purports to opine on the law as an expert witness. Lawson states:

> [A] No Further Action letter ("NFA") or similar document from the appropriate regulatory authority is **normally necessary** to demonstrate to a potential lessee of the property whether the investigation and remediation activities conducted at 250 Stockton Ave in regard to the diesel contamination are sufficient and/or complete; and in light of the fact that there is not a NFA or similar document for the diesel remediation work at 250 Stockton Ave., I would advise a client to find another property to lease assuming other potential lease property factors are similar.

8

(Lawson Declaration, Dkt. 38-1, ¶ 4) (emphasis added).  Lawson offers a legal opinion, and a description of some legal advice that he would provide.

Defendants object to the admissibility of Lawson's opinion and the Court sustains the objection.  First, "expert" opinions about legal conclusions are inappropriate.  *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.")  Second, Lawson's four-paragraph declaration lays no foundation or provides any basis for his opinion.  He states that he reviewed a remediation report, a fuel leak closure letter, and site photographs, but he cites no statute, case, or regulation as a basis for his legal conclusion.  Finally, Lawson does not actually opine that any type of letter would actually be required in this case – he states that a letter "is normally necessary" to show potential lessees that the remediation was complete.

SVTX does not offer any authority, in the subleases or otherwise, for requiring defendants to provide an "Environmental Closure Letter," a No Further Action letter, or any other similar document.  Accordingly, the Court finds that defendants' failure to obtain an Environmental Closure Letter, or other similar document, did not constitute a breach of the Verio Sublease or the NTTA Sublease.

### 3. Objections to Evidence

The Court has addressed all objections to the evidence it relied on for this Order.  The Court refrains from ruling on any remaining objections to evidence that it did not rely on for this Order.

### ORDER

Based on the foregoing, the Court grants defendants' motions for partial summary judgment.  The Court finds, as a matter of law, that:

1) SVTX is not entitled to holdover rent from Verio after July 2, 2010;

2) SVTX is not entitled to holdover rent from NTTA;

9

3) Failure to obtain an Environmental Closure Letter, or other similar document, did not constitute a breach of the Verio Sublease or the NTTA Sublease.

SO ORDERED.

Dated: August 13, 2013



_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C 12-00899 HRL Order will be electronically mailed to:**

Brittany N. DePuy bdepuy@mofo.com, llontayao@mofo.com

Bryan Joseph Wilson bwilson@mofo.com, cfix@mofo.com

Edward F. Cullen efcullen@wpclaw.com, bprevost@wpclaw.com

Kenneth Alexander Kuwayti KKuwayti@mofo.com, BGomez@mofo.com

Marc Leroy Pinckney marcpinckney@gmail.com

Peter H Day pday@mofo.com

Peter H Day pday@mofo.com, fsagapolu@mofo.com

Stefan Jan Szpajda sszpajda@mofo.com, fsagapolu@mofo.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**