BRYAN WILSON (BAR NO. 138842)
BWilson@mofo.com
KENNETH A. KUWAYTI (BAR NO. 145384)
KKuwayti@mofo.com
STEFAN J. SZPAJDA (BAR NO. 282322)
SSzpajda@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Attorneys for Defendants
VERIO INC. & NTT AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SILICON VALLEY TELECOM EXCHANGE, LLC, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>VERIO INC., a Delaware corporation; NTT AMERICA, INC., a Delaware corporation; and DOES 1 through 25,<br><br>Defendants. | Case No. 12-CV-00899 HRL<br><br>**DEFENDANTS VERIO INC. AND NTT AMERICA, INC.'S TRIAL BRIEF**<br><br>Date: September 10, 2013<br>Time: 1:30pm<br>Dept: Courtroom 2, 5th Floor<br>Judge: Hon. Howard R. Lloyd<br><br>Trial Date: September 16, 2013 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 2

I. SVTX INTENTIONALLY AND REPEATEDLY DELAYED VERIO AND NTTA'S EFFORTS TO VACATE 250 STOCKTON .......... 2

A. Verio and NTTA Terminated Their Leases Because of SVTX's Persistent Failure to Properly Manage 250 Stockton Jeopardized Their Operations .......... 2

B. After Months of Delay, SVTX Insisted That Verio and NTTA Were Obligated to Return 250 Stockton to Core and Shell, and Approved Verio and NTTA's Decommissioning Plan .......... 3

C. At the Last Minute, SVTX Unilaterally Canceled the Decommissioning Plan and Seized Verio and NTTA's Equipment .......... 4

II. SVTX DELAYED THE REMEDIATION .......... 5

A. SVTX's Environmental Consultant Testified that Remediation Could Have Been Completed in Days or Weeks if SVTX Had Not Interfered with Verio and NTTA's Removal of the Equipment .......... 5

B. SVTX Required Verio and NTTA to Go Above and Beyond Even its Own Environmental Consultant's Supplemental Work Plan .......... 5

III. 250 STOCKTON WAS CONTAMINATED BEFORE VERIO AND NTTA LEASED THE PREMISES .......... 6

LEGAL ISSUES .......... 7

I. VERIO AND NTTA DID NOT BREACH ANY LEASE TERM, AND SVTX HAS NOT SHOWN OTHERWISE .......... 7

A. No Provision of Verio and NTTA's Respective Lease Agreements Required Verio and NTTA to Comply with SVTX's Erratic Demands .......... 7

II. SVTX CAN NEITHER RAISE NEW CLAIMS AND DAMAGES THEORIES FOR THE FIRST TIME AT TRIAL, NOR REVIVE CLAIMS THAT IT HAS ABANDONED .......... 7

A. The Presence of Equipment at 250 Stockton Does Not Entitle SVTX to Damages .......... 8

B. SVTX Has No Viable Claim for Lost Rent, and Abandoned that Claim in any Event .......... 8

III. SVTX DID NOT SUFFER ANY DAMAGES AS A RESULT OF VERIO OR NTTA'S ACTS OR OMISSIONS .......... 9

A. SVTX Is Not Entitled to Damages for Lost Rent .......... 9

**TABLE OF CONTENTS**
**(continued)**

**Page**

1. No Tenant Ever Refused to Lease 250 Stockton ........................................ 9

2. 250 Stockton Is Not Suitable for a Data Center........................................ 10

3. Even If SVTX Could Show that It Was Injured, It Did Not Attempt to Mitigate Damages .................................................................... 10

B. Verio and NTTA Are Not Obligated to Pay SVTX's Environmental Expenses........................................................................................... 10

CONCLUSION ......................................................................................................... 11

**INTRODUCTION**

Very little remains to be tried in this case. The Court's August 13 summary adjudication order disposed of Silicon Valley Telecom Exchange, LLC's ("SVTX") claim for holdover rent—the theory on which SVTX pursued this case. And although the Court did not adjudicate SVTX's claim for lost rent, which was not before it in the motion, as detailed in Verio Inc. ("Verio") and NTT America's ("NTTA") concurrently filed motion *in limine* No. 1, SVTX has no viable basis for claiming lost rent, and its discovery responses show that SVTX abandoned its claim for lost rent long ago. Consequently, the only claim that will remain to be adjudicated at trial will be SVTX's claim for reimbursement of environmental expenses.

It is unclear what basis for liability SVTX intends to present at trial. SVTX pled in its complaint that it is entitled to lost rent damages for two reasons: Verio and NTTA's presence at 250 Stockton Ave. in San Jose, California ("250 Stockton") during remediation, and Verio and NTTA's failure to obtain an environmental closure letter. But the Court rejected both theories of liability in its summary adjudication order, and neither remains in the case. In opposing summary adjudication, SVTX also claimed for the first time that it was entitled to recover lost rent because Verio and NTTA left generators and related equipment on the property. But SVTX never pled this as a basis for recovering lost rent and, to the contrary, insisted that Verio and NTTA were *required* to leave the equipment on the property when they were on the verge of removing it, and has conclusively admitted that it owns the generators.

Irrespective of which claims are tried, SVTX is not entitled to any damages from Verio or NTTA. Verio and NTTA met all of their lease obligations, and neither Verio nor NTTA harmed SVTX in any way. The contamination at 250 Stockton occurred long before Verio and NTTA moved in. Moreover, the evidence will show that SVTX itself caused the very delays it alleges entitle it to damages. Dismissal with prejudice of SVTX's frivolous claims, with costs and sanctions awarded to Verio and NTTA, is the only appropriate result in this case.

## STATEMENT OF FACTS

### I. SVTX INTENTIONALLY AND REPEATEDLY DELAYED VERIO AND NTTA'S EFFORTS TO VACATE 250 STOCKTON

Verio and NTTA elected to terminate their leases because of SVTX's persistent mismanagement of 250 Stockton. Verio and NTTA wasted no time informing SVTX that they were terminating their leases. But after being informed that Verio and NTTA were leaving, SVTX did not respond. Instead, it dragged its feet for months. SVTX greatly delayed Verio and NTTA's efforts to remediate the property, by insisting that Verio and NTTA leave the generator equipment on the property, which exponentially increased the complexity of the remediation, and by requiring Verio and NTTA to remediate the property to a standard not required by any governmental agency. This was all part of STVX's response to technology change and a collapsing real estate market—it wanted to keep the equipment in place to help attract new tenants, but the equipment and building were too old and outdated to be of interest to any new tenant. SVTX's only financial hope was to try to force Verio and NTTA to continue to pay rent even after the leases were terminated.

#### A. Verio and NTTA Terminated Their Leases Because of SVTX's Persistent Failure to Properly Manage 250 Stockton Jeopardized Their Operations

Verio and NTTA entered into their Lease Agreements with SVTX to operate data centers at 250 Stockton. Among other things, the Lease Agreements required SVTX to provide electricity and security—two of the most critical things required for a data center—so that Verio and NTTA could run their facilities. SVTX consistently failed to meet its lease obligations, culminating in a notice that Verio sent SVTX in December 2001 that listed more than a dozen independent grounds for default. In 2002, Verio chose to vacate 250 Stockton, electing to pay rent on vacant space *for eight-and-a-half years* rather than put up with SVTX's ongoing failure to deliver a minimum level of service. Although NTTA stayed longer, it too ceased operations at 250 Stockton well before the termination of its Lease Agreement. By 2009, both Verio and NTTA were operating their data centers at a different facility near 250 Stockton. SVTX

collected millions of dollars of rent from Verio and NTTA for property that for years was used only by Mr. Rubio's other businesses.

### B. After Months of Delay, SVTX Insisted That Verio and NTTA Were Obligated to Return 250 Stockton to Core and Shell, and Approved Verio and NTTA's Decommissioning Plan

SVTX obstructed Verio and NTTA's efforts to vacate 250 Stockton from the moment it learned that Verio and NTTA would be terminating their leases. In May 2009, Verio and NTTA asked Mr. Rubio to confirm their end of lease obligations. Between May and September, Verio and NTTA repeatedly wrote to Mr. Rubio for clarification as to the manner in which SVTX wanted the property to be turned over at the end of the lease. Verio and NTTA's requests went unanswered. When Verio and NTTA sent termination letters to Mr. Rubio on July 30, 2009 through certified mail, the letters were returned unopened.

SVTX ignored Verio and NTTA's requests for clarification and notice of termination until September 16, 2009. At that time SVTX insisted that the terms of each party's lease agreement *required* Verio and NTTA to remove the fuel tank and generators that Verio had installed at 250 Stockton ("the equipment"), and to return the entire site back to core and shell. Wishing to satisfy SVTX, Verio and NTTA began accepting bids for decommissioning of its equipment to remove the equipment and return 250 Stockton back to core and shell. On November 3, 2009 Verio and NTTA's contractor CBI, Inc. provided SVTX with a detailed decommissioning plan to accomplish these goals. The plan would have cost Verio and NTTA nothing, as CBI was willing to accept the salvage cost of the equipment in exchange for carrying out the decommissioning. SVTX approved the plan. As soon as SVTX approved the decommissioning plan in November 2009, Verio and NTTA began accepting bids from subcontractors to complete the work. With contractors and subcontractors in place, decommissioning was set to begin on March 9, 2010.

But then SVTX stopped it.

### C. At the Last Minute, SVTX Unilaterally Canceled the Decommissioning Plan and Seized Verio and NTTA's Equipment

Four months after approving Verio and NTTA's decommissioning plan and just days before decommissioning was set to begin, SVTX abruptly reversed field and insisted it was entitled to Verio and NTTA's equipment and that the equipment could not be removed.

The first sign of SVTX's change of heart came on February 23, 2010, two weeks before Verio and NTTA were about to begin the scheduled removal of equipment at 250 Stockton, when SVTX unexpectedly offered a buyout of Verio and NTTA's lease obligation. This offer, of course, implicitly recognized that the equipment belonged to Verio and NTTA and that SVTX needed to purchase the equipment from Verio and NTTA to acquire it. If Verio and NTTA accepted SVTX's buyout offer, SVTX would take title to the equipment. Verio and NTTA considered the offer and rejected it on March 3. But that did not stop SVTX.

The day after Verio and NTTA's rejection, SVTX responded by simply taking the equipment that, the day before, it recognized belonged to Verio and NTTA. On March 4, 2010—five days before the decommissioning was set to begin—SVTX sent a cease and desist letter ordering Verio and NTTA not to remove the equipment and threatening suit if they failed to comply. Mr. Pinckney, the same counsel who represents SVTX in this lawsuit, sent a second cease and desist letter on March 10. Mr. Pinckney's letter repeated arguments SVTX made in its March 4 letter that the equipment belonged to SVTX and could not be removed from the property. Although SVTX had no basis to seize Verio and NTTA's equipment, Verio and NTTA agreed to comply with SVTX's demands, hoping to avoid the litigation that SVTX threatened.

SVTX's unexpected reversal meant that the decommissioning would not go forward, and that the equipment would remain at 250 Stockton to become a windfall for SVTX. On March 31, Verio and NTTA made a final request to remove the equipment and proceed with the restoration of 250 Stockton. Verio and NTTA offered to abide by the decommissioning plan that SVTX had already approved. Verio and NTTA explained that if SVTX did not accept this offer by April 10, Verio and NTTA would comply with SVTX's cease and desist letters and leave the equipment

behind on an "as is" basis. In the end, SVTX did not permit Verio and NTTA to decommission 250 Stockton, and the equipment remained on the property.

SVTX never retracted its cease and desist letters, and took ownership of the equipment on an "as is" basis.

## II. SVTX DELAYED THE REMEDIATION

Despite not having any evidence of contamination attributable to Verio or NTTA, or any regulatory reason for remediation to be done, SVTX insisted that Verio and NTTA were required to clean the soil at 250 Stockton. But instead of facilitating Verio and NTTA's remediation of the land adjacent to their leased warehouse space, SVTX prevented Verio and NTTA from removing the equipment. SVTX's insistence that the equipment could not be removed greatly complicated and delayed the remediation. And once remediation began, SVTX caused further delays by insisting that Verio and NTTA perform remediation to a level not required by any regulation or agreement.

### A. SVTX's Environmental Consultant Testified that Remediation Could Have Been Completed in Days or Weeks if SVTX Had Not Interfered with Verio and NTTA's Removal of the Equipment

Although SVTX sued Verio and NTTA on the theory that the remediation extended beyond Verio and NTTA's lease terms, SVTX alone made this inevitable. If SVTX had not reneged on its approval of Verio and NTTA's decommissioning plan and prevented the removal of the equipment, the site would have been remediated in a matter of days. SVTX's own environmental consultant, Benjamin Berman of E2C, Inc., testified that had the equipment been removed the site could have been remediated in a "matter of days or weeks." Because decommissioning was set to begin on March 9, 2010, Mr. Berman's testimony confirms that Verio and NTTA could have completed work long before the termination of their respective Lease Agreements if SVTX had not prevented them from doing so.

### B. SVTX Required Verio and NTTA to Go Above and Beyond Even its Own Environmental Consultant's Supplemental Work Plan

Once remediation began, SVTX continued to cause delays. SVTX delayed completion of remediation by insisting that the soil be remediated to a level not required by any government or

regulatory agency. SVTX continued to add requirements to Verio and NTTA's remediation plan even after Mr. Berman counseled SVTX that there was preexisting contamination at 250 Stockton that had nothing to do with Verio or NTTA, and that regulatory agencies often permit contamination to remain at a site at levels significantly above the level SVTX was insisting upon.

## III. 250 STOCKTON WAS CONTAMINATED BEFORE VERIO AND NTTA LEASED THE PREMISES

Although SVTX has not pled that the presence of contamination at 250 Stockton entitled it to damages, its pretrial statement suggests this is an argument SVTX may raise for the first time at trial. If SVTX attempts to argue that it is entitled to damages because contamination was present at 250 Stockton, the evidence will show that Verio and NTTA were not responsible for the contamination they remediated.

It is undisputed that 250 Stockton was contaminated when Verio and NTTA began their tenancies. Environmental records confirm that 250 Stockton was contaminated when Verio and NTTA began their tenancies, and Verio and NTTA's expert, Dr. Peter Krasnoff, will testify that the contamination Verio and NTTA remediated was not caused by Verio or NTTA. Dr. Krasnoff's testimony is based on environmental records from 250 Stockton that show the distribution of contamination could not have been caused by an aboveground fuel tank and generator system of the type maintained by Verio and NTTA. The depth and distribution of contamination confirms that preexisting contamination and other likely sources—including train tracks that are mere feet from the generator system—are much more likely sources.

SVTX has no answer to Dr. Krasnoff. The evidence will show that (a) Mr. Berman informed SVTX that contamination predated Verio and NTTA's tenancies, (b) the preexisting contamination was far more harmful than diesel, and (c) regulatory agencies routinely close sites with much higher concentrations of contamination than was present at 250 Stockton. In contrast, SVTX's environmental consultant, Mr. Berman will testify that he is not qualified to opine in this area and only drew an inference that it was possible that contamination from the diesel tank ended up in the soil. In fact at his deposition, Mr. Berman could not even say whether it was more

likely than not that the contamination remediated was caused by Verio and NTTA, so SVTX cannot meet its burden of proof on this issue.

## LEGAL ISSUES

### I. VERIO AND NTTA DID NOT BREACH ANY LEASE TERM, AND SVTX HAS NOT SHOWN OTHERWISE

Verio and NTTA did not breach any term of their respective Lease Agreements.

#### A. No Provision of Verio and NTTA's Respective Lease Agreements Required Verio and NTTA to Comply with SVTX's Erratic Demands

As described above, Verio and NTTA did not breach any of the provisions of their lease agreements. Verio and NTTA did not cause any contamination at 250 Stockton. But even if they did, SVTX is itself responsible for any delays associated with the remediation that Verio and NTTA voluntarily undertook. If SVTX had not prevented Verio and NTTA from removing the equipment from 250 Stockton in accordance with the plan it had previously approved, the remediation could have been completed before the end of the lease terms. SVTX then dragged the remediation out for months, insisting on remediating the soil to a level not required by any government agency on property that already contained contamination that was far worse. SVTX will not be able to show at trial that Verio or NTTA breached any provision of their respective Lease Agreements.

In addition, the Court has already adjudicated SVTX's theory of liability for holdover rent and, as detailed in Verio and NTTA's motion *in limine* No. 1, Verio has no viable claim for lost rent damages. Only SVTX's claim for reimbursement of environmental expenses, at most, remains for trial.

### II. SVTX CAN NEITHER RAISE NEW CLAIMS AND DAMAGES THEORIES FOR THE FIRST TIME AT TRIAL, NOR REVIVE CLAIMS THAT IT HAS ABANDONED

The only claim that remains to be decided is SVTX's claim for reimbursement of environmental expenses. SVTX cannot argue claims that it did not plead in its complaint, or that it pled but subsequently abandoned. Along with any other claims or theories that SVTX did not

plead or disclose, SVTX should be precluded from arguing (a) that the presence of equipment at 250 Stockton entitles it to damages, or (b) that it is entitled to lost rent.

**A. The Presence of Equipment at 250 Stockton Does Not Entitle SVTX to Damages**

As detailed in Verio and NTTA's concurrently filed motion *in limine* No. 1, documentary evidence, SVTX's discovery responses, and SVTX's deposition testimony unambiguously show that SVTX owns the equipment at 250 Stockton, and its presence at the site does not entitle SVTX to damages. Even if SVTX had pled in its complaint that the presence of the equipment entitles it to damages, this is no longer an issue for trial. As the Court confirmed in its May 28 discovery order, SVTX admitted to owning the equipment at 250 Stockton. Under Federal Rule of Civil Procedure 36(a), SVTX's ownership of the equipment is conclusively established. Verio and NTTA will ask the Court to find that having insisted in March 2010 that the equipment could not be removed from the property, and causing Verio and NTTA to incur hundreds of thousands of dollars in additional remediation costs, SVTX is estopped from taking a different position now. Equitable estoppel is an issue for the Court to decide. *See Harara v. Conoco Phillips Co*., No. C04-0515 BZ, 2005 U.S. Dist. LEXIS 1149, at *6 fn. 3 (N.D. Cal. Jan. 27, 2005) citing *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 61 (Cal. App. 2d Dist. 1994) (holding that the trial court erred by refusing to consider equitable estoppel claim in light of the jury verdict, noting that estoppel is a "nonjury fact question to be determined by the trial court").

**B. SVTX Has No Viable Claim for Lost Rent, and Abandoned that Claim in any Event**

As detailed in Verio and NTTA's concurrently filed motion *in limine* No. 1, SVTX has no viable claim for lost rent and abandoned that claim in any event. SVTX should not be permitted to revive its lost rent claim at trial. On summary adjudication, the Court rejected the only two grounds pled in SVTX's complaint on which a claim for lost rent could be based. Specifically, SVTX pled in its complaint that Verio and NTTA retained possession of 250 Stockton during remediation of land adjacent to the warehouse Verio and NTTA formerly leased from SVTX.

The Court rejected this theory, finding that Verio and NTTA did not retain possession of 250 Stockton. SVTX also pled that Verio and NTTA's failure to obtain an environmental closure letter entitled it to damages. The Court found against SVTX on this issue as well, finding that there was no requirement under the lease or at law to obtain such a closure letter.

It is too late for SVTX to invent a new theory. Even if it could articulate a cognizable basis for claiming lost rent, SVTX's discovery responses show that it abandoned that claim and, as discussed below, that there is no evidence whatsoever of any disruption to its operations at 250 Stockton.

## III. SVTX DID NOT SUFFER ANY DAMAGES AS A RESULT OF VERIO OR NTTA'S ACTS OR OMISSIONS

As explained above, SVTX cannot show that Verio or NTTA breached their respective leases. But even if they could show a breach, SVTX did not suffer any injury attributable to Verio or NTTA. To the contrary, Verio and NTTA paid for and executed a voluntary remediation at 250 Stockton for the benefit of SVTX after termination of their respective leases. The remediation was a windfall for SVTX.

### A. SVTX Is Not Entitled to Damages for Lost Rent

SVTX's admissions and discovery responses show that the remediation did not interfere with its operations at 250 Stockton, and that neither Verio nor NTTA caused SVTX to suffer any damages.

#### 1. No Tenant Ever Refused to Lease 250 Stockton

Even if SVTX could permissibly find some basis for reviving its claim for lost rent, no individual or entity ever refused to rent 250 Stockton for any reason attributable to Verio or NTTA. Instead, the one entity SVTX identified who even discussed leasing 250 Stockton declined to lease it because the facilities were inadequate. Moreover, the remediation did not in any way interfere with SVTX's operations at 250 Stockton. SVTX and several customers of SVTX's related entities continued to operate at 250 Stockton without interruption throughout the remediation. And SVTX's deposition testimony, as well as its various related entities' verified discovery responses, confirm that not one of the companies that operates at 250 Stockton created

a single document complaining about—or even referring to—the remediation, or the environmental condition at 250 Stockton.

#### 2. 250 Stockton Is Not Suitable for a Data Center

Even if SVTX had made every effort to lease 250 Stockton (which it did not), it could not have overcome the fact that 250 Stockton is not suitable for a modern data center. And the evidence will show that 250 Stockton's inadequacy has nothing to do with environmental issues. Verio and NTTA's expert witness, Mr. Andrew Zighelboim, will testify that there are three independent reasons that 250 Stockton is not competitive in the market. First, the facilities at 250 Stockton are outdated. Second, energy costs in San Jose are higher than nearby Santa Clara, where most new data centers in the area are located. Third, there are at least six other data centers in Santa Clara that are superior to 250 Stockton, and that do not have full occupancy. SVTX does not have any evidence to rebut Mr. Zighelboim's testimony.

#### 3. Even If SVTX Could Show that It Was Injured, It Did Not Attempt to Mitigate Damages

SVTX failed to mitigate its damages because it did not attempt to lease 250 Stockton. Despite having months, if not years, to plan for Verio and NTTA's departure, SVTX chose not to seek tenants for 250 Stockton.

### B. Verio and NTTA Are Not Obligated to Pay SVTX's Environmental Expenses

Although Verio and NTTA did not contaminate 250 Stockton, they did pay for its remediation. Not satisfied with this half-million dollar windfall, SVTX demands reimbursement for its own alleged environmental expenses. But SVTX is not entitled to any compensation from Verio or NTTA. Verio and NTTA did not cause any contamination at 250 Stockton, and are not obligated to pay SVTX for environmental expenses. SVTX has also never provided a computation of its alleged environmental expenses. There are no reliable records to document any of SVTX's claimed expenses.

SVTX's discovery responses suggest that its claim for environmental expenses includes attorneys' fees. But nothing in Verio or NTTA's respective Lease Agreements entitles SVTX to its claimed attorneys' fees.

**CONCLUSION**

Between the Court's summary adjudication order, SVTX's failures of pleading and its discovery responses, the only claim left to try is SVTX's claim for reimbursement of environmental expenses. SVTX is not entitled to recover those expenses. Even if SVTX is permitted to argue other claims at trial, the evidence will show that Verio and NTTA were not responsible for any harm to SVTX. SVTX only has itself to blame for its failure to find a tenant for 250 Stockton.

Dated: August 27, 2013

BRYAN WILSON
KENNETH A. KUWAYTI
STEFAN J. SZPAJDA
MORRISON & FOERSTER LLP

By: *\/s/ Kenneth A. Kuwayti*
KENNETH A. KUWAYTI

Attorneys for Defendants
VERIO INC. & NTT AMERICA, INC.